UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEONDRE T. HUDSON,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>PHILLIPS, et al.,<br><br>　　　　　Defendants. | No. 2:23-cv-01821 SCR P<br><br><br>ORDER |

Plaintiff is a county inmate proceeding pro se and in forma pauperis with a civil rights action under 42 U.S.C. § 1983. Plaintiff's first amended complaint ("FAC") is before the undersigned for screening pursuant to 28 U.S.C. § 1915A. For the reasons set forth below, the undersigns finds that plaintiff's FAC fails to state any cognizable claims. Plaintiff will be given an opportunity to file a second amended complaint.

**STATUTORY SCREENING OF PRISONER COMPLAINTS**

The court is required to screen complaints brought by prisoners seeking relief against "a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In performing this screening function, the court must dismiss any claim that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." Id. § 1915A(b). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325

(1989). The court may dismiss a claim as frivolous if it is based on an indisputably meritless legal theory or factual contentions that are baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989).

In order to avoid dismissal for failure to state a claim a complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-557 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim upon which the court can grant relief has facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. When considering whether a complaint states a claim, the court must accept the allegations as true, Erickson v. Pardus, 551 U.S. 89, 93-94 (2007), and construe the complaint in the light most favorable to the plaintiff, Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

## PLAINTIFF'S FAC

### I.      Factual Allegations

Plaintiff's FAC concerns events at Sacramento County Jail in 2022. It names four defendants: (1) Deputy Phillips; (2) Ms. Payne, a Records Officer; (3) Deputy Tambini; and (4) Deputy Vue. (ECF No. 7 at 2.) The FAC alleges an Eighth Amendment threat to safety violation and a First Amendment outgoing mail violation. (Id. at 3-4.) Plaintiff requests a notice of complaint placed in each defendant's file, training on their respective positions, an "inquiry" into their previous misconduct, and monetary compensation in an unspecified amount. (Id. at 6.)

### A. Allegations Regarding Conditions in Temporary Rehousing Unit

On July 13, 2022, plaintiff left Sacramento County Jail for a doctor's appointment. (ECF No. 7 at 3.) When plaintiff returned, defendants Deputy Tambini and Deputy Vue told him he was being rehoused for being transported on a "med run." (Id.) Plaintiff informed them that they were mistaken and that it was a scheduled visit, which could be confirmed by the nurses down the

hall. Defendants Tambini and Vue refused to confirm. (Id.)

Plaintiff reported to the new housing and relayed the same message to defendant Deputy Phillips and a Deputy Smith. (ECF No. 7 at 3.) Defendant Phillips told plaintiff to take it up with Classification. Plaintiff informed them of pre-existing conditions that placed him at high risk for suffering and death from COVID-19, and his previous illness on January 3, 2022. (Id.) Defendant Phillips stated that he "didn't have time," "didn't care," and that "everybody gets [COVID]" so plaintiff should "man up." Smith said nothing when plaintiff appealed to him. (Id.) Plaintiff was then coerced into a cell and assigned a top bunk. (Id. 3.) Plaintiff pleaded to be housed alone until medical sorted things out. Defendant Phillips told him to "get the fuck into the cell." (Id.) Plaintiff informed Phillips of his lower bunk chrono dated December 30, 2020, for seizures, diabetic foot neuropathy, and degenerative disc disease. Nothing was done. (Id.)

Once inside of the cell, plaintiff pressed the medical emergency button. Defendant Payne said that it was not an emergency, and that plaintiff was being a problem. (ECF No. 7 at 3.) Plaintiff was refused blankets and his seizure medications by the deputies, despite having chronos for both. (Id.) Plaintiff slept on the floor with no blanket. Later that night, a Deputy Barrera contacted Classification and confirmed the rehousing was an error. However, plaintiff had to stay on quarantine because officers had forced him into a cell with someone else on quarantine. (Id.) Plaintiff alleges that he was "stressed out" for two weeks from the thoughts of catching COVID-19 and feared having seizures without his medications, and in fact had a seizure on January 3, 2022, the last time he was without his medications for days. (Id.)

**B. Allegations Regarding Outgoing Legal Mail**

On July 15, 2022, plaintiff had three envelopes of legal mail to process. (ECF No. 7 at 4.) He gave them to defendant Deputy Phillips, who gave them to defendant Record Officer Payne. (Id.) Defendant Payne took the envelopes to her desk with her back to plaintiff. Plaintiff pressed the intercom alerting Payne that he was still waiting. Defendant Payne screamed and cursed at plaintiff, stating that she already signed them and that he needed to return to his cell. (Id.) Plaintiff responded that he needed to see his legal mail properly processed as procedure dictates. Deputy Smith entered the booth, spoke with Payne, retrieved the three envelopes, and brought

3

them out of the booth.  The envelopes were open and not sealed or signed as she stated.  Deputy Smith then sealed and signed all three. (Id.)  Plaintiff alleges his right to confidentiality was violated as Payne personally mishandled and concealed legal correspondence that "detail[ed] my treatment by her and her deputies."  (Id.)

**DISCUSSION**

**I.      Plaintiff's FAC Fails to State Cognizable § 1983 Claims**

A plaintiff may bring an action under 42 U.S.C. § 1983 to redress violations of "rights, privileges, or immunities secured by the Constitution and [federal] laws" by a person or entity, including a municipality, acting under the color of state law.  42 U.S.C. § 1983.  To state a claim under 42 U.S.C. § 1983, a plaintiff must show that (1) a defendant acting under color of state law (2) deprived plaintiff of rights secured by the Constitution or federal statutes.  Benavidez v. County of San Diego, 993 F.3d 1134, 1144 (9th Cir. 2021).

As explained below, plaintiff's FAC does not state cognizable § 1983 claims.  The FAC contains many of the same deficiencies as plaintiff's original complaint, including a failure to allege any concrete harms resulting from defendants' actions.[1]  The undersigned will grant plaintiff leave to file a second amended complaint and provides the relevant legal standards for his § 1983 claims, as well as the standards for filing amended complaints.

**A. Eighth Amendment Conditions of Confinement**

Plaintiff alleges an Eighth Amendment "threat to safety" claim. (ECF No. 7 at 3.)  The undersigned construes this as two separate Eighth Amendment causes of action: (1) a conditions of confinement claim related to exposure to COVID-19; and (2) a medical indifference claim regarding the denial of his lower bunk, blanket, and seizure medication chronos.  Plaintiff's

---

[1] Plaintiff alleges he was "stressed out" and "distraught" from the thought of contracting COVID-19 and having a seizure but does not allege the requisite "physical injury" necessary to recovery monetary damages.  42 U.S.C. § 1997e(e); see also Bell v. Williams, 108 F.4th 809, 829 (9th Cir. 2024) ("The [PLRA] requires an incarcerated plaintiff … to prove a 'physical injury' as a condition of recovering compensatory damages for mental or emotional harms.").  This omission bars plaintiff's recovery of damages but does not impact his requests for staff training and other forms of injunctive relief.  See Parsons v. Alameda Cnty. Sheriff Dep't, No. 14-cv-4674 HSG, 2016 WL 3877907, at *1 n.3 (N.D. Cal. July 18, 2016) (§ 1997e(e) does not preclude § 1983 actions for declaratory or injunctive relief (citing Farmer, 511 U.S. at 845)).

conditions of confinement claim will be addressed first.

### i. Legal Standard

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (quotation marks omitted) (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted).

To state an Eighth Amendment conditions of confinement claim, a prisoner must allege facts that satisfy a two-prong test. Peralta v. Dillard, 744 F.3d 1076, 1082 (9th Cir. 2014) (citing Farmer, 511 U.S. at 837. The first prong is an objective prong, which requires that the deprivation be "sufficiently serious." Lemire v. Cal. Dep't of Corr. & Rehab., 726 F.3d 1062, 1074 (9th Cir. 2013) (citing Farmer, 511 U.S. at 834). To be sufficiently serious, the prison official's "act or omission must result in the denial of the minimal civilized measure of life's necessities." Lemire, 726 F.3d at 1074. The objective prong is not satisfied in cases where prison officials provide prisoners with "adequate shelter, food, clothing, sanitation, medical care, and personal safety." Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quoting Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982)). "[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation. Id. at 732 ("[m]ore modest deprivations can also form the objective basis of a violation, but only if such deprivations are lengthy or ongoing"). Rather, extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Farmer, 511 U.S. at 834; Hudson v. McMillian, 503 U.S. 1, 9 (1992). The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. Johnson, 217 F.3d at 731.

The second prong focuses on the subjective intent of the prison official. Peralta, 774 F.3d

1   at 1082 (9th Cir. 2014) (citing Farmer, 511 U.S. at 837). The deliberate indifference standard
2   requires a showing that the prison official acted or failed to act despite the prison official's
3   knowledge of a substantial risk of serious harm to the prisoner. Id. (citing Farmer, 511 U.S. at
4   842); see also Redman v. Cnty. of San Diego, 942 F.2d 1435, 1439 (9th Cir. 1991). Mere
5   negligence on the part of the prison official is not sufficient to establish liability. Farmer, 511
6   U.S. at 835.

        **ii.    Analysis**

8   Involuntary exposure to COVID-19 can satisfy the objective prong of the Eighth
9   Amendment analysis. See Hampton v. California, 83 F.4th 754, 766 (9th Cir. 2023) (shelter-in-
10  place orders and mask mandates punishable by law supported allegation of "intolerably grave"
11  risks from involuntary exposure to COVID-19). Here, the FAC's allegations support the
12  inference that Sacramento County Jail implemented a quarantine procedure to reduce the spread
13  of COVID-19. For screening purposes, this is minimally sufficient to establish the "sufficiently
14  serious" risks of exposure to COVID-19. See Elliott v. Nevada, No. 2:23-CV-0680 JAD NJK,
15  2024 WL 3489303, at *7 (D. Nev. July 19, 2024) (mandated safety measures to reduce spread of
16  COVID-19, including quarantine procedures, were sufficient to establish objective prong of
17  Eighth Amendment analysis on screening (citing Hampton, 83 F.4th at 766)).

18  However, the FAC's allegations do not satisfy the subjective prong of the Eighth
19  Amendment analysis. "[I]n examining whether a prison official subjectively acted with deliberate
20  indifference to the risk of COVID-19, the key inquiry … is whether [he] 'responded reasonably to
21  the risk.'" Cox v. Bal, No. 2:22-cv-0804 WBS EFB, 2024 WL 4977193, at *1 (E.D. Cal. Dec. 4,
22  2024) (citations omitted). While defendants Tambini, Vue, and Phillips dismissed plaintiff's
23  health concerns, the allegations do not support an inference that they disregarded a specific risk of
24  infection in the unit, such as housing plaintiff with a COVID-positive cellmate. Nor does the
25  FAC allege that defendants' actions ran afoul of any mandated safety measures in the jail.

26  For these reasons, plaintiff has not stated a conditions of confinement claim regarding
27  exposure to COVID-19. The undersigned will grant plaintiff an opportunity to file an amended
28  complaint. If plaintiff chooses to amend, he is advised to allege a particularized risk of COVID-

19 and how defendants were deliberately indifferent to that risk, as well as a resulting injury.

### B. Eighth Amendment Deliberate Indifference to Serious Medical Needs

#### i. Legal Standard

Denial or delay of medical care for a prisoner's serious medical needs may constitute a violation of the prisoner's Eighth and Fourteenth Amendment rights. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). An individual is liable for such a violation only when the individual is deliberately indifferent to a prisoner's serious medical needs. Id.; see Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002); Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000).

In the Ninth Circuit, the test for medical deliberate indifference consists of two parts. Jett, 439 F.3d at 1096, citing McGuckin v. Smith, 974 F.2d 1050 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc). First, the plaintiff must show a "serious medical need" by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Id. (citing Estelle, 429 U.S. at 104). "Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" Lopez, 203 F. 3d at 1131-32 (citing McGuckin, 974 F.2d at 1059-60).

Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. Jett, 439 F.3d at 1096. This second prong is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Id. Under this standard, the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference." Farmer, 511 U.S. at 837. This "subjective approach" focuses only "on what a defendant's mental attitude actually was." (Id. at 839.) A showing of merely negligent medical care is not enough to establish a constitutional violation. Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998) (citing Estelle, 429 U.S. at 105-106).

7

          **ii.**    **Lower Bunk and Blank Chronos**

Plaintiff has not stated an Eighth Amendment claim regarding defendants' disregard for his lower bunk or blanket chronos. The risks associated with an upper bunk can rise to the level of a sufficiently serious risk under the Eighth Amendment. See, e.g., West v. Pettigew, No. 2-11-cv-1692 JAM JFM PC, 2013 WL 85380, *2 (E.D. Cal. Jan. 8, 2013) (denying defendants motion to dismiss plaintiff's Eighth Amendment claim where plaintiff alleged prison officials disregarded his lower bunk chrono for months and he suffered a fall). But here, it is not evident how long plaintiff was denied access to a lower bunk or whether he suffered any injuries as a result. Similarly, the FAC does not state how long plaintiff went without a blanket or whether the unit was cold. The undersigned cannot determine whether these alleged deprivations were objectively serious enough to state a claim without further information regarding their duration and any resulting harms. See Farmer, 511 U.S. at 834 (conditions must result in the denial of the minimal civilized measure of life's necessities to rise to an Eighth Amendment violation).

          **iii.**    **Plaintiff's Seizure Medication**

The FAC's allegations that plaintiff has a seizure condition and had a seizure in January 2022 the last time his medication was withheld are sufficient to plead a "serious medical need." See Tufono v. Dhillion, No. 2:23-cv-2691 DB P, 2024 WL 1559171, at *1 (E.D. Cal. Mar. 4, 2024) (screening in medical indifference claim where prisoner-plaintiff alleged prison physicians failed to provide anti-seizure medication despite his history of seizures). However, plaintiff has not sufficiently alleged any defendant's deliberate indifference to his condition. The FAC does not expressly name the deputies who denied his medication; defendant Payne refused to respond to plaintiff's emergency calls, but there are no facts in which to her infer her knowledge of plaintiff's seizure condition or approved seizure medication. Nor does plaintiff allege he had a seizure or suffered any other harm from defendants' alleged indifference other than being "stressed out." See McGuckin, 974 F.2d at 1060 (where the claim is based on delay in treatment, "a prisoner can make 'no claim for deliberate medical indifference unless the denial was harmful.'" (quoting Shapley v. Nevada Board of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir.1985) (per curiam))). Accordingly, plaintiff's FAC does not state a cognizable Eighth

Amendment medical indifference claim regarding the withholding of his seizure medication.

### C. First Amendment Outgoing Legal Mail

#### i. Legal Standard

Under the First Amendment, prisoners have a right to send and receive mail. Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam). Courts have afforded greater protection to legal mail than non-legal mail. See Thornburgh v. Abbott, 490 U.S. 401, 413 (1989). In the Ninth Circuit, prisoners have a "protected First Amendment interest in having properly marked, confidential legal mail opened only in their presence." Hayes v. Idaho Corr. Ctr., 849 F.3d 1204, 1211 (9th Cir. 2017). However, only mail from plaintiff's lawyer or prospective lawyer is protected. See Nordstrom v. Ryan, 762 F.3d 903, 909 (9th Cir. 2014) (describing the right at issue as the right to be free from "prison officials reading mail between a prisoner and his lawyer"); Keenan v. Hall, 83 F.3d 1083, 1094 (9th Cir. 1996) ("mail from the courts, as contrasted with mail from a prisoner's lawyer, is not legal mail"). As to communication with counsel, a plaintiff need not "'show any actual injury beyond the free speech violation itself to state a constitutional claim.'" Hayes, 849 F.3d at 1212 (quoting Al-Amin v. Smith, 511 F.3d 1317, 1333 (11th Cir. 2008)).

#### ii. Analysis

Plaintiff's allegation that his "right to confidentiality was violated" when defendant Payne "mishandled and concealed his legal correspondence" does not state a cognizable First Amendment Claim. (Id.) The FAC's claim fails for two reasons. First, because the FAC does not identify the mail's recipients, the undersigned cannot determine whether the communications were protected (i.e., addressed to plaintiff's lawyer or prospective lawyer). "To prove a violation regarding legal mail, a plaintiff must 'clarify who sent the mail or whether it was properly marked as 'legal mail.'" Jackson v. Quick, No. 1:19-cv-1591 JLT EPG PC, 2022 WL 7688183, at *7 (E.D. Cal. Oct. 13, 2022) (quoting Hayes, 849 F.3d at 1211), report and recommendation adopted, No. 1:19-cv-1591 JLT EPG PC, 2023 WL 24180 (E.D. Cal. Jan. 3, 2023).

Second, the FAC does not allege what specific, impermissible actions defendant Payne took while in possession of plaintiff's mail. Not all handling of incarcerated persons' legal mail

9

violates the First Amendment. For instance, prison officials are permitted to inspect, but not read, an inmate's outgoing legal mail. Nordstrom v. Ryan, 856 F.3d 1265, 1272 (9th Cir. 2017). Further, "a plaintiff must show that the opening of legal mail was due to more than negligence to state a constitutional violation." Jackson, 2022 WL 7688183, at *7 (citing Stevenson v. Koskey, 877 F.2d 1435, 1441 (9th Cir. 1989)). "A single instance of opening legal mail outside the presence of an individual in custody, 'without allegations showing prison staff acted deliberately as opposed to merely inadvertently,' is insufficient to state a constitutional violation." Sims v. Palacios, No. 2:23-cv-1310 VBF PD, 2024 WL 4744016, at *2 (C.D. Cal. Jan. 9, 2024) (quoting Ricalls v. Hinton, 2020 WL 2128648, at *5, n. 4 (C.D. Cal. May 5, 2020)).

Here, even assuming defendant Payne's statements that she signed and sealed the envelopes were untruthful, the FAC does not allege that she read the correspondence, opened the envelopes intentionally, or took any other prohibited action. The significance of Deputy Smith finding the envelopes open is unclear because the FAC does not state whether plaintiff presented them to defendants Phillips and Payne sealed or unsealed. The FAC suggests Payne's actions were improper but does not explain how or identify a specific procedure. For these reasons, plaintiff's FAC fails to allege a First Amendment violation regarding his outgoing legal mail.

**II.     Leave to Amend**

Having conducted the screening required by 28 U.S.C. § 1915A, the court finds that plaintiff's FAC does not state valid claims for relief under the Eighth Amendment or the First Amendment. Plaintiff's Eighth Amendment claims fail because he does not identify a specific risk of COVID-19 that defendants disregarded or explain how long he was denied his various medical chronos. Further, plaintiff has not alleged any unlawful action taken by defendants Phillips or Payne while they possessed his legal mail, or that his legal mail was a protected attorney/client communication. Because of these defects, the court will not order the complaint to be served on defendants.

Plaintiff may try to fix these problems by filing an amended complaint. If plaintiff chooses to file an amended complaint, he must demonstrate how the conditions about which he complains resulted in a deprivation of his constitutional rights. Rizzo v. Goode, 423 U.S. 362,

370-71 (1976).  Plaintiff is advised to consider the Eighth Amendment and First Amendment legal standards reproduced above.

Moreover, the complaint must also allege in specific terms how each named defendant is involved.  Arnold v. Int'l Bus. Machs. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981).  There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.  Id.; Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Furthermore, "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient." Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted).

Plaintiff is also informed that the court cannot refer to a prior pleading in order to make his amended complaint complete.  Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.  This is because, as a general rule, an amended complaint supersedes any prior complaints.  Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967) (citations omitted).  Once plaintiff files an amended complaint, any previous complaint no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

## CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's complaint fails to state a claim upon which relief may be granted, see 28 U.S.C. § 1915A, and will not be served.

2. Within thirty (30) days from the date of service of this order, plaintiff may file an amended complaint that complies with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice.  The amended complaint must bear the docket number assigned this case, **Case No. 2:23-cv-01821 SCR P**, and must be labeled **"Second Amended Complaint."**

3. Failure to file an amended complaint in accordance with this order will result in a recommendation that this action be dismissed pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.

4. The Clerk of the Court is directed to send plaintiff a copy of the prisoner complaint form used in this district.

DATED: June 20, 2025

_____
SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE